John C. Wyvill, Commissioner Arkansas Rehabilitation Services Department of Workforce Education 1616 Brookwood Drive Little Rock, AR 72203
Dear Mr. Wyvill:
You have presented the following questions for my opinion:
 (1) Based on current federal legislation, regulations and policy interpretations, do public and private post-secondary institutions in Arkansas have a legal responsibility for the provision of auxiliary aids and services to all students with disabilities who participate in their programs?
 (2) Based on current federal legislation, regulations and policy interpretations, is Arkansas Rehabilitation Services required to pay for the compliance obligations of public and post-secondary institutions for vocational rehabilitation consumers participating in post-secondary educational programs?
 (3) Can Arkansas Rehabilitation Services voluntarily enter into a binding legal commitment to assist a public or private post-secondary institution in meeting their compliance obligations in serving students with disabilities who are also vocational rehabilitation consumers? If so, must such an agreement require a private or public post-secondary institution to provide ARS with a substantially similar cash value of the services rendered to the institution by ARS?
 (4) If a public or private post-secondary institution refuses to provide auxiliary aids and services to a vocational rehabilitation consumer, can ARS provide the services needed and bill the institutions for the services provided and seek to recoup directly from them?
 (5) Can ARS refuse to purchase services from a public or private post-secondary institution that refused to provide auxiliary aids and services, hence making the services inaccessible to its vocational consumers?
RESPONSE
Question 1 — Based on current federal legislation, regulations and policyinterpretations, do public and private post-secondary institutions inArkansas have a legal responsibility for the provision of auxiliary aidsand services to all students with disabilities who participate in theirprograms?
Summary of Response: It is my opinion that both public and private post-secondary institutions in Arkansas are required by law to provide auxiliary aids and services (as defined by law) to all qualified students with disabilities who participate in their programs.
Discussion
The "Americans with Disabilities Act" (ADA) (42 U.S.C. §§ 12131 et seq.) generally prohibits discrimination on the basis of disability. Title II of the ADA prohibits such discrimination by public entities.42 U.S.C. § 12132. Title III of the ADA prohibits such discrimination in public accommodations (including educational institutions) operated by private entities. 42 U.S.C. § 12182. In order to avoid discrimination on the basis of disability, both public and private entities must provide auxiliary aids and services to qualified individuals. This requirement arises out of the references in the ADA to the provision of auxiliary aids and services, and out of the regulations that have been promulgated pursuant to the ADA.
References in the ADA to the provision of auxiliary aids and services appear in two crucial sections. The first is in the definition of the phrase "qualified individual with a disability" (i.e., the persons against whom discrimination is prohibited). That definition states:
 The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.
42 U.S.C. § 12131(2).
The second crucial reference to the provision of "auxiliary aids and services" appears in the explanation of the term "discrimination" with reference to private entities operating public accommodations. That explanation states:
 For purposes of subsection (a) of this section, discrimination includes —
* * *
 (iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or other wise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]
42 U.S.C. § 12182(b)(2)(A)(iii).
The regulations that have been promulgated pursuant to the ADA are explicit in requiring both public entities and private entities operating public accommodations to provide auxiliary aids and services[1] to qualified individuals.
The regulations that have been promulgated pursuant to the ADA to govern public entities include a provision that states:
 (b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity.
28 C.F.R. § 35.160(b)(1).
The regulations that have been promulgated pursuant to the ADA to govern public accommodations operated by private entities include a provision that states:
 (a) General. A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense.
28 C.F.R. § 36.303(a).
The requirement of providing auxiliary aids and services is also imposed by the Rehabilitation Act of 1973 (as amended), 28 U.S.C. § 720 et seq.,
and its related regulations, upon institutions that receive federal funding (including post-secondary educational institutions). That act prohibits such institutions from excluding qualified individuals with disabilities from participating in the institutions' programs because of their disabilities. 29 U.S.C. § 794. The act authorizes various agencies to promulgate regulations for the implementation of the act. Id. The Department of Education's regulation that applies to post-secondary institutions receiving federal funding states:
 (d) Auxiliary aids. (1) A recipient to which this subpart applies shall take such steps as are necessary to ensure that no handicapped student is denied the benefits of, excluded from participation in, or otherwise subjected to discrimination because of the absence of educational auxiliary aids for students with impaired sensory, manual, or speaking skills.
 (2) Auxiliary aids may include taped texts, interpreters or other effective methods of making orally delivered materials available to students with hearing impairments, readers in libraries for students with visual impairments, classroom equipment adapted for use by students with manual impairments, and other similar services and actions. Recipients need not provide attendants, individually prescribed devices, readers for personal use or study, or other devices or services of a personal nature.
34 C.F.R. § 104.44(d)(1).
All of the above-cited federal laws and regulations are unambiguous in requiring post-secondary institutions to provide qualified students with auxiliary aids and services, as those terms are defined by law. Both public and private post-secondary institutions are subjects to this requirement.
Question 2 — Based on current federal legislation, regulations and policyinterpretations, is Arkansas Rehabilitation Services required to pay forthe compliance obligations of public and post-secondary institutions forvocational rehabilitation consumers participating in post-secondaryeducational programs?
Summary of Response: Assuming that that Arkansas Rehabilitation Services (ARS) is a "designated state agency," within the meaning of the Rehabilitation Act of 1973 (as amended), it is my opinion that ARS is required to pay for the compliance obligations of public[2]
post-secondary institutions that fail to fulfill their obligations to rehabilitation consumers participating in their programs. However, ARS is entitled to receive reimbursement from those institutions.
Discussion
Although, as discussed in response to Question 1, public and private post-secondary institutions are required by law to provide certain aids and services to qualified students, the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 720 et seq., requires the "designated state agency" to pay for those aids and services at a public institution if that public institution fails to do so.
The Rehabilitation Act, as amended, creates a program of federal grants for the purpose of assisting the states in establishing statewide programs for vocational rehabilitation. 29 U.S.C. § 720(a)(2). In order to receive grants under this program, the states are required to submit plans to the federal Commissioner of Rehabilitation Services for statewide provision of vocational rehabilitation services. 29 U.S.C. § 721(a)(1). The submitted plans must meet various requirements. One such requirement is that the state's plan must designate one or more state agencies that are to be responsible for the administration and supervision of the plan. 29 U.S.C. § 721(a)(2)(A). These designated state agencies are also responsible for providing or paying for auxiliary aids and services if a public entity fails to provide or pay for them. The Act does recognize the primacy of the responsibility of these other public entities to provide or pay for these aids and services, as imposed by federal or state law.29 U.S.C. § 721(a)(8)(C)(i). However, having recognized these other public entities' primary responsibility, the Act goes on to state:
 If a public entity other than the designated State unit fails to provide or pay for the services described in clause (i) for an eligible individual, the designated State unit shall provide or pay for such services to the individual. Such designated State unit may claim reimbursement for the services from the public entity that failed to provide or pay for such services. Such public entity shall reimburse the designated State unit pursuant to the terms of the interagency agreement or other mechanism described in this paragraph according to the procedures established in such agreement or mechanism pursuant to subparagraph (B)(ii).
29 U.S.C. § 721(a)(8)(C)(ii).
On the basis of the above-quoted unambiguous language from the Act, I must conclude that if a public post-secondary institution fails to pay for the required aids and services (and if ARS is a designated state agency within the meaning of the Act), ARS must pay for those aids and services, but is entitled to receive reimbursement from the public institution that failed to pay.
Question 3 — Can Arkansas Rehabilitation Services voluntarily enter intoa binding legal commitment to assist a public or private post-secondaryinstitution in meeting their compliance obligations in serving studentswith disabilities who are also vocational rehabilitation consumers? Ifso, must such an agreement require a private or public post-secondaryinstitution to provide ARS with a substantially similar cash value of theservices rendered to the institution by ARS?
Summary of Response: Although I cannot opine as to the legality of any hypothetical agreement, it is my opinion that Arkansas Rehabilitation Services (ARS) (assuming that it is a participant in the federal grant program established by the Rehabilitation Act, as amended) is authorized by law to enter into agreements with public and private entities providing for the coordination of the provision of required vocational rehabilitation services.
Discussion
As discussed in response to Question 2, the Rehabilitation Act, as amended, requires that participating states submit plans to the Commissioner of Rehabilitation Services for the statewide provision of vocational rehabilitation services. 29 U.S.C. § 721(a)(1). As also noted, these plans must meet various requirements. Among the items that must be addressed by the plans is the following:
(B) Interagency agreement
 The State plan shall include an assurance that the Governor of the State, in consultation with the entity in the State responsible for the vocational rehabilitation program and other appropriate agencies, will ensure that an interagency agreement or other mechanism for interagency coordination takes effect between any appropriate public entity, including the State entity responsible for administering the State Medicaid program, a public institution of higher education, and a component of the statewide workforce investment system, and the designated State unit, in order to ensure the provision of vocational rehabilitation services described in subparagraph (A) (other than those services specified in paragraph (5)(D), and in paragraphs (1) through (4) and (14) of section 723(a) of this title), that are included in the individualized plan for employment of an eligible individual, including the provision of such vocational rehabilitation services during the pendency of any dispute described in clause (iii).
29 U.S.C. § 721(a)(8)(B).
In addition to the above requirement concerning agreements with public entities, the proposed state plan must also address the following, concerning agreements with private entities:
(24) Certain contracts and cooperative agreements
(A) Contracts with for-profit organizations
 The State plan shall provide that the designated State agency has the authority to enter into contracts with for-profit organizations for the purpose of providing, as vocational rehabilitation services, on-the-job training and related programs for individuals with disabilities under part A of subchapter VI of this chapter [29 U.S.C.A. § 795 et seq.], upon a determination by such agency that such for-profit organizations are better qualified to provide such rehabilitation services than nonprofit agencies and organizations.
(B) Cooperative agreements with private nonprofit organizations
 The State plan shall describe the manner in which cooperative agreements with private nonprofit vocational rehabilitation service providers will be established.
29 U.S.C. § 721(a)(24).
The above-quoted sections from the Rehabilitation Act appear to indicate that agencies such as ARS can enter into agreements with other entities (both public and private) to coordinate the provision of rehabilitation services. It is not entirely clear what you mean by a "commitment to assist a public or private post-secondary institution in meeting their compliance obligations in serving students with disabilities who are also vocational rehabilitation consumers." Although it is certainly conceivable that this phrase describes a commitment that could be permissible under the law, the question of whether a provision of this nature in a particular agreement meets the requirements of the Act or is otherwise legal can only be determined through analysis of the particular provision and the particular agreement.
If ARS enters into an agreement with another public entity, pursuant to the Rehabilitation Act, the agreement must address the issue of reimbursement. More specifically, the Act requires that the agreement provide the following information concerning agreements with other public entities:
 Information specifying the conditions, terms, and procedures under which a designated State unit shall be reimbursed by other public entities for providing such services, based on the provisions of such agreement or mechanism.
29 U.S.C. § 721(a)(8)(B)(ii). The Act states no similar requirement with regard to agreements with private entities.
The question of the legality of a particular provision in an agreement concerning the provision of cash value for services rendered can only be evaluated on a case-by-case basis. I therefore cannot answer the second part of your question in the abstract. However, it is clear that the agreement must address the issue of the reimbursement of the designated state agency for the fulfillment of the public entity's legal responsibility to provide services.
Question 4 — If a public or private post-secondary institution refuses toprovide auxiliary aids and services to a vocational rehabilitationconsumer, can ARS provide the services needed and bill the institutionsfor the services provided and seek to recoup directly from them?
It is my opinion, as discussed more fully in response to Question 2, that if a public post-secondary institution fails to provide auxiliary aids and services that it is required by law to provide to a vocational rehabilitation consumer, ARS is required to provide such aids and services and is entitled to receive reimbursement from the public institution that failed to do so. The law apparently does not authorize the designated state agencies to seek or receive reimbursement from private institutions. For a more thorough discussion of this issue, see response to Question 2.
Question 5 — Can ARS refuse to purchase services from a public or privatepost-secondary institution that refused to provide auxiliary aids andservices, hence making the services inaccessible to its vocationalconsumers?
Summary of Response: It is my opinion that in the absence of an agreement allowing ARS to refuse to purchase services from a public post-secondary institution because that public institution has failed to provide the services, ARS cannot refuse to purchase services from that institution. However, it is my opinion that ARS does have the discretion to refuse to purchase services from private institutions that fail to comply with the law.
Discussion
It is my understanding that this question envisions a scenario in which ARS declines to send its clients to certain post-secondary institutions that have failed to provide aids and services as required by law. Instead (under this scenario), ARS could fulfill its responsibility to provide or pay for services at another institution, rather than at the institution that failed to provide the services.
This course of action by ARS would clearly be permissible if ARS had entered into an agreement with the institution, and the agreement included a provision permitting such a course of action by ARS. In the absence of such an agreement, this scenario would require an interpretation of the law under which ARS could fulfill its responsibility at another institution, rather than at the institution that had failed to provide the required aids or services. It is my opinion that such an interpretation of the law is incorrect.
As discussed in response to Question 2, ARS is required to provide or pay for aids and services that a public institution fails to provide or pay for. Again, the requirement states:
 If a public entity other than the designated State unit fails to provide or pay for the services described in clause (i) for an eligible individual, the designated State unit shall provide or pay for such services to the individual. Such designated State unit may claim reimbursement for the services from the public entity that failed to provide or pay for such services. Such public entity shall reimburse the designated State unit pursuant to the terms of the interagency agreement or other mechanism described in this paragraph according to the procedures established in such agreement or mechanism pursuant to subparagraph (B)(ii).
29 U.S.C. § 721(a)(8)(C)(ii).
It is my opinion that the above-quoted requirement was designed to make public institutions accessible to qualified vocational rehabilitation consumers to the same extent that they are accessible to other qualified consumers. In this regard, the language of the requirement appears to envision the provision of aids and services at the institution that failed to provide them. For this reason, I interpret the phrase "such services," as used in this provision, to refer to such aids and services as would make the particular public institution in question accessible to the vocational rehabilitation consumer to the same extent that that same institution would be accessible to other qualified consumers. To interpret this requirement as allowing ARS to refuse to send its clients to certain institutions would, in essence, foreclose those institutions to those clients. In my view, such an interpretation would thwart the purposes of the requirement. (I note that the client, of course, may wish to choose another institution; however, this discussion is based upon the assumption that the institution that failed to provide the aids and services is the institution that the client wishes to attend.)
Accordingly, I conclude that in the absence of an agreement permitting ARS to choose another institution, ARS does not have the option of refusing to purchase services from a public institution that fails to provide the required aids and services. Instead, ARS must provide or pay for those services at that institution, and then seek reimbursement from the institution. The institution is required to reimburse ARS.
I reiterate that, as stated in response to Question 2, ARS's responsibility to pay for the compliance obligations of post-secondary institutions applies only to public institutions, and not to private ones. 29 U.S.C. § 721(a)(8)(C)(ii). It is therefore my opinion that ARS does have the discretion to refuse to purchase the services of private institutions that fail to comply with the law.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] The ADA-related regulations explain the term "auxiliary aids and services" as follows:
(b) Examples. The term "auxiliary aids and services" includes —
 (1) Qualified interpreters, notetakers, computer-aided transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments;
 (2) Qualified readers, taped texts, audio recordings, Brailed materials, large print materials, or other effective methods of making visually delivered materials available to individuals with visual impairments;
(3) Acquisition or modification of equipment or devices; and
(4) Other similar services and actions.
28 C.F.R. § 36.303(b).
[2] I note that this requirement applies only to situations involvingpublic institutions. See 29 U.S.C. § 721(a)(8)(C)(ii), quoted in the body of the opinion.